## WALTON and others *vs.* TIFFT.

Where a deed described the west line of the premises conveyed as running south " *to the north bounds of Hudson river*, thence easterly along the said river, so as to include so much of the island as is situated within lot No. 2, which island lies near the said north bounds of Hudson river," &c.; *Held*, that this boundary carried the grantee to the center of the main channel of the river, and not merely to the bank.

Although a grantor may so limit his grant as to exclude the bed of a river, or a highway, mentioned as one of the boundaries, yet if, without any language of exclusion, a line is described as *along a highway*, or *upon a highway*, or as running *to a highway*, or as *by the river*, or *along the river*, or *upon the margin of the river*, or to the *bank of the river*, it has been pretty uniformly held in this state, that these expressions carry the grantee to the center of the highway, or to the center of the river. *Per* Willard, P. J.

This was an action brought to recover a lot of land in Warren county, and was tried at the Warren circuit in June, 1852, before C. L. Allen, justice.

Walton *v.* Tifft.

The plaintiffs were four of the heirs at law of Henry Walton, who died in 1845. It was proved that in 1792, lot 2 in lot 10 of the 25th allotment of the patent of Kayaderosseras was conveyed in fee, by the other tenants in common, to Henry Walton, and it was not denied that he became seised of the whole of lot No. 2. Hudson river runs an easterly course through lots 1, 2 and 3. A part of lot 2 lies on the north side of the river, in the county of Warren, and a part on the south side of the river, in the county of Saratoga. An island containing about twelve acres of land lies in the river, north of the main channel thereof, and nearly all within lot 2. The west end of the island lies in lot 1. The complaint sought to recover all that part of lot 2 which lies north of the center of the channel of the Hudson river. It was shown that the defendant came into possession of the premises claimed, four or five years before the trial, under his father-in-law, Charles Harris, who deduced his title through sundry mesne conveyances from Alfred Pitcher, who claimed to have purchased from Henry Walton, in 1811, or about that time, the whole of lot No. 2 lying north of the center of Hudson river. Pitcher died seven or eight years before the trial, and the deed from Walton to him was shown to be lost. Lansing D. Pitcher, a son of Alfred Pitcher, proved that he had seen the deed; that it was a warranty deed, and he thought it bounded the premises on the south by the main channel of the river. He delivered it to King Allen. Allen testified that it conveyed all of lot No. 2 lying north of the channel of the river. There was a map on the deed, showing that it embraced that part of the island lying in lot 2, and going south to the channel. The plaintiffs gave in evidence the exemplification of a mortgage given by Alfred Pitcher and wife to Henry Walton, dated 15th April, 1811, which he insisted was for the same premises which Walton had conveyed to Pitcher by the deed which was lost. The boundaries, as described in the mortgage, are thus : " Beginning at the N. E. corner of lot No. 1 in the subdivision of No. 10, running thence along the east bounds of No. 1, south to *the north bounds of Hudson river*, thence easterly along the said river so as to include so much of the island as is situated within lot No. 2, which

island lies near the said north bounds of Hudson river, to the west bounds of No. 3 in the subdivision of lot No. 10, thence along the same north to the north bounds of the patent; thence along the same N. 84° west 23 ch. 77 links to the place of beginning, containing," &c.

The plaintiffs' counsel asked the judge to submit to the jury, whether the plaintiffs had not shown title to the bed of the river from the center of the channel to the island. The court refused so to submit the question, and directed the jury to find a verdict for the defendant, which they did accordingly. To which the plaintiffs' counsel excepted. Judgment having been given for the defendant, the plaintiffs appealed to this court. Other facts are sufficiently stated in the opinion.

*J. Ellsworth,* for the appellants.

*E. F. Bullard,* for the respondents.

*By the Court,* WILLARD, P. J.   The jury were warranted in finding from the evidence, that the deed from Walton to Pitcher, under which title the defendant held, was bounded on the north by the main channel of the river; and if so, there was no pretense that the plaintiffs were entitled to recover. The judge was authorized to direct a verdict for the defendant, on that ground alone. The plaintiffs did not ask to go to the jury on what were the actual contents of the deed to Pitcher, nor whether it was lost or not. But assuming that the deed described the premises exactly as they were described in the mortgage, of which an exemplification was produced by the plaintiffs, it carried the grantee to the center of the main channel of the river. The plaintiffs maintain that this boundary merely includes the island to highwater mark, and thus leaves in the plaintiffs, as heirs of Henry Walton, that portion of the bed of the river, lying north of the center of the main channel and highwater mark on the south side of the island. This is the point in dispute, and, as I understand the case, the only point.

At common law, a grant of land bounded upon the sea shore,

or upon a stream or arm of the sea, where the tide ebbs and flows, conveys to the grantee only that part of the bank which is not covered by the water at the ordinary flood tide. It does not carry with it the lands under water, the islands in the stream, or the right of fishery. In order to pass these, the terms of the grant must be so clear and explicit as to leave no manner of doubt as to the intention of the grantor to part with those rights. But the rule is directly the reverse as to those grants which are bounded on rivers and streams *above tide water.* In such cases, if the grant is bounded *on the stream,* or *along the same,* or *on the margin thereof,* or *on the bank of the river,* or when any other words of similar import are used, it legally extends to the middle or thread of the stream; and not only the bank but the bed of the river, and the islands therein, and the exclusive right of fishing, are conveyed to the grantee, unless they are expressly reserved, or the terms of the grant are such as to show a clear intention to exclude them from the general operation of the rule of law. (*Per Walworth, Ch. in Canal Commissioners* v. *The People,* 5 *Wend.* 443. *Same* v. *Kempshall,* 26 *Id.* 404. *Child* v. *Starr,* 4 *Hill,* 369, 373. *Varick* v. *Smith,* 9 *Paige,* 547. 5 *Coke's Rep.* 106. *Ex parte Jennings,* 6 *Cowen,* 518.) The right of the riparian owner to the stream itself is not absolute, by the English common law. If the stream be navigable, the grantee bounded on the river takes the legal ownership to the center of the stream, subject, nevertheless, to the right of the public to use the waters thereof, as a public highway for the passage of boats or other water craft. (*Hale de Jure Maris.* 6 *Cowen,* 539, *note, and the cases before cited.*) Such, too, is the common law of this state.

In applying these principles, it was held in *Luce* v. *Carley,* (24 *Wend.* 451,) where one of the courses in the deed ran to a hemlock stake " standing on the east bank of the river, from thence down the river as it winds and turns, 24 chains and 94 links, to a hard maple tree," &c. that the grantee took to the center of the stream. Cowen, J. in delivering the judgment of the court, says, where the grant is so framed as to touch the water of the river, and the parties do not expressly except the

river, one half the bed of the stream, if it be above tide, is included by construction of law. If the parties mean to exclude it, they should do so by express exception. The doctrine of this case is not shaken by *Child* v. *Starr*, (4 *Hill*, 369,) reversing the same case in the supreme court. (20 *Wend.* 149.) On the contrary, the general doctrine of *Luce* v. *Carley* is affirmed by the court of errors in *Child* v. *Starr*. The only effect of the latter case is to show that a boundary *along the shore of a river* is an express restriction of the grant, and prevents the grantee from taking to the center of the stream. It has never been denied, in this state, that the grantor may so limit his grant as to exclude the bed of the river, or the highway, as either may happen to be referred to in the grant. (*Jackson* v. *Hathaway*, 15 *John.* 454.) But if, without any language of exclusion, the line is described as *along a highway*, or *upon a highway*, or as running *to a highway*, or as *by the river*, or *along the river*, or *upon the margin of the river*, or to the *bank of the river*, it has been pretty uniformly held in this state, that those expressions carry the grantee to the center of the highway in the one case, and to the center of the river in the other. The court of errors held, in *Child* v. *Starr*, that, under the circumstances of that case, the words *along the shore of the river*, meant the bank above low water mark, and did not mean the thread of the stream. The supreme court of Massachusetts, in *Hatch* v. *Dwight*, (17 *Mass. Rep.* 298,) decided that when land was bounded by the *bank of a stream*, and it appeared pretty clear that the stream was intended to be excluded, the grant would be limited by the bank. Judge Story made a similar decision in *Dunlap* v. *Stetson*, (4 *Mason*, 349.) Both those cases were rather cases of construction than otherwise, for both learned courts concede the law to be as it has been above explained.

The case under consideration does not fall within any of those which restrict the boundary to the bank, and exclude the river. The west line of the lot runs north till it strikes "the *north bounds* of Hudson river, thence easterly *along the said river*, so as to include so much of the island as is situated in lot No. 2." Even the words *along the said river*, are prima facie suffi-

Walton *v.* Tifft.

cient to indicate the center of the stream as the line. The words *so as to include the island,* &c. were inserted, lest a doubt might be entertained as to which channel of the river would be meant by the words *along the said river.* The word " bounds" of the river, in this deed, do not indicate the bank or shore of the river, but the center. The same word is applied, in the same convey-ance, to the division line between lots 2 and 3 and the north line of the patent. By *bounds* is meant the legal, imaginary line by which the different parcels of land are divided. The plaintiffs' counsel concedes that the west line does not stop at the north bounds, or bank of the river. If it did, it could not thence run *along the said river,* nor could it include the island which lies north of the main channel. Many of the American cases on this point are collected in a note to *Dovaston* v. *Payne,* (2 *Smith's Lead. Cases, Hare & Wallace's ed.* 192, 193,) and in *Angell on Watercourses,* 21 *to* 41, *the last edition.*

The offer of the plaintiffs to show that Henry Walton and Gerard Walton conveyed the parts of lots 1 and 3, and the south part of lot 2, by a description, bounding the grantees on the shore, leaving the channel and islands out of such conveyances, was properly rejected by the learned judge. The fact that the grantors expressly excepted the channel of the river, in these cases, can have no effect on the legal construction of the deed under which the defendant holds. But as the decision was not excepted to, it need not be further noticed.

The cause was correctly disposed of at the circuit, and the judgment should be affirmed.

Judgment affirmed.

[FULTON GENERAL TERM, September 6, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]