Kennedy, J.
The defendants waive any defect of parties. I am of the opinion that the remainderman after the termination of the life estate will be in no manner affected by the judgment in this action. It would be prudent at least to have made them parties. Yielding, however, to the wishes of the parties, I think it proper to dispose of the questions in the case at least so far as the same may relate to and affect the life estate of the plaintiff.
It is insisted by the defendants that the plaintiff, as devisee, cannot maintain this action, it being one involving the construction of the will. The plaintiff concedes that before the adoption of the Code of Civil Procedure this action could not he maintained, but he insists that by the provisions of section 1866 of said Code the right is vested in the plaintiff to bring it for the construction of, and to have adjudged the effect of the said several devises.
By chapter 238 of the Laws of 1853, as amended by chapter 316 of the Laws of 1879,_ it is provided that the validity of any actual or alleged devise or will of real estate may be determined by the supreme court in a proper action for that purpose, &c. By this provision the only action a devisee could maintain was one to determine the validity of any actual or alleged devise. Section 1866, which is a substitute for and is enacted in the place of said provision, provides “ that the validity, construction or effect, under the laws of the state, of a testamentary disposition of real property situate within the state, or of an interest in such property which *513 would descend to an heir of the intestate, may be determined, in an action brought for that purpose, in like manner as the validity of a deed purporting to convey real estate may be determined,” &c.
I am not. aware that this provision has received a judicial construction. In the absence of this I am left to give it such effect as the language imports and as the legislature manifestly intended. I am of the opinion that the added words- “ construction ” and “ effect ” are to be taken and construed in their literal sense and ordinarily understood meaning; and giving them this construction it was intended to vest in a devisee a right to bring his action to determine the true, effect and meaning of a devise to him of real estate, and that he has-a right to require, by action brought for that purpose, the judgment of this court as to the intent and meaning of a testator in making a testamentary disposition of real estate so far as the same involves the interest of the devisees. This seems the more manifest from the subsequent language: “ In the-same manner as the validity of a deed purporting to convey real estate may be determined.” If this construction is-denied, no effect can be given to the words quoted, incorporated as new, in said section. It was manifestly the intention of the testator to give to his children, the several devisees, all the land which he owned, lying south of and between the river road and the Mohawk river. It would be unjust to assume, if he in fact owned to the center of the river, that lie-intended to limit the devised lands to the bank of the stream and retain the bed, which of itself was of no value and could! not be rendered of avail independent of the adjoining lands for any practical purpose.' The question then as to the extent of the gift must be determined by the title in the decedent as it existed at the time of his death. The complaint alleges that the decedent’s title to the piece of land first-described, extended to the “ Mohawk river ” and thence along the same. As to the second parcel it is alleged as bounded on the south by the “ Mohawk river.” The truth of these *514 .allegations is expressly admitted by the answer; and if the ¡river was a non-navigable stream, upon the description in the ¿grant, no question could arise but that it carried the title to •the middle of the stream. It must be regarded as established, ¡and judicial notice may be taken of the fact, that the Mohawk river is a navigable stream, and the extent of the testator’s ■title must be determined in the light of this fact.
The question whether the bed of navigable rivers in this .state remained in the people when the tide did not ebb and flow, or whether the public reservation extended only to a isimple easement consisting of, and limited to, the right of passage has been the subject of much discussion, and in earlier •days of considerable judicial conflict (Tibbitts case, 17 Wend., 571; Commissioners of the Canal agt. Kempshall, 26 Wend., 404; Child agt. Starr, 4 Hill, 369; Walton agt. Tift, 14 Barb., 216). These and many others, apparently conflicting, ■ came under review by the court of appeals (In the People on the relation, &c., as Canal Appraisers, 33 N. Y., 461). .judge Davis there examines the authorities not only in this :state but in many sister states, as well also those in England, .and reached the conclusion that the doctrine of the common-law that those streams could only be regarded as navigable in .a legal sense when the tide ebbed and flowed was not applicable to the inland waters of this state; but that the question was to be determined by the fact, regardless of the common-law limitations, and such was the unanimous judgment of the -court. This doctrine has been frequently affirmed since, and-I think may be regarded as settled (Crill agt. City of Rome, 47 How., 398; see, also, Seneca Nation of Indians agt. Knight, 23 N. Y., 500). This being the law the title to the :bed of the Mohawk river remains in the people, and the ■decedent under his conveyance took only to its bank.
It is suggested by the plaintiff that in the absence of proof, and in light of the fact that the changed state of things renders the reservation of the bed in the state valueless, that a grant ■may be presumed. I cannot subscribe to this notion, but *515 must determine the question upon the evidence as it exists, and hold that the decedent was not the owner or in possession of any part of the bed of the Mohawk river at the time of his death; and that, in ascertaining the westerly lines of the twenty acre parcels devised, the southerly lines is to terminate on the bank of the same. The devise to Jane Jones is twenty acres of land; the same lies south of the center of the highway or river road, and runs down to the Mohawk river and adjoining on the west side what was once the “ Miller lot.” That to Elizabeth G-annon is twenty acres, “ lying on the westerly side of the lands above given to my daughter Jane and adjoining the same.” That to Catherine Owen is twenty acres, “ lying on the westerly side of the lands above given to my daughter Elizabeth and adjoining the same.” The defendants concede that the twenty acres devised to Jane Jones is to be ascertained by running a line parallel to the Miller line, and far enough from the same to give twenty acres. It seems to me quite apparent that it was the intent of the testator to run the easterly and westerly lines of each of the twenty acre pieces parallel, and with intent to make each as near alike as possible.
It is claimed by the defendants that they, with the plaintiff, have assented to a construction of the will in reference to the location of the respective twenty acres devised, and that they have practically located the same, and that by such practical location the lines of each twenty acres running from the river road to the Mohawk, and drawn perpendicular, or at right angles to said road, instead of parallel to the Miller line.
This claim rests upon a survey made by one Edic about April, 1884. The plaintiff was present a part of the time when it was made, and conversations were had between the parties in relation to the same. By the line as run by Edic the western boundary of the twenty acres given to Catherine Owen excludes the plaintiff from the Mohawk river and deprives him of the use of its waters for agricultural or any other purpose. On the other hand, if the lines are run parallel *516 to the Miller line it gives the plaintiff access to the river. The evidence that the plaintiff understood where the survey located the lines, or that by such location he was excluded from the river, is not sufficient to justify the conclusion that having requisite knowledge he assented to the survey, or that he is now estopped from claiming that the true intent of the testator should be ascertained and carried out. The paper produced by the defendants, and called an agreement between Thomas W. Jones and Catherine Owen, was never executed and delivered, and is therefore inoperative, having no binding force or effect.
Upon the trial the defendants offered in evidence deeds or mere conveyances through which the decedent derived his title, for the purpose of establishing the fact, as he claimed, that considering the grants on the Mohawk to be controlled by the common-law rule, by its application under the terms of such prior conveyances, his (decedent’s) title did not extend beyond the bank of the river. This evidence was objected to by the plaintiff as inadmissible under the pleadings, and in the light of the admissions in the answer immaterial. By consent of the respective counsel the question was reserved, and such conveyances read subject to the objection.
I am of the opinion that the admissions in the answer are binding; and for the purposes of the trial ought to be held conclusive upon the defendants; and that it would not be a proper exercise of discretion by the court to permit the same to be recalled upon the trial (Paige agt. Willet, 38 N. Y., 28 ; Tell agt. Deyer, 38 N. Y., 161; 30 N. Y., 110). I therefore sustain the plaintiff’s objection, and the defendant is entitled to an exception, with the exclusion of evidence. The motion of the defendants to amend the answer to make it conform to the proposed evidence becomes unimportant and is denied.
Judgment is ordered in conformity to the opinion, but under the circumstances, without costs to either party.